## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | |
|---|---|
| **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**<br>George H. Fallon Federal Building<br>31 Hopkins Plaza, Suite 1432<br>Baltimore, MD 21201<br><br>**Plaintiff,**<br><br>v.<br><br>**LEN STOLER, INC. T/A LEN STOLER AUTO GROUP**<br>11275 Reisterstown Road<br>Owings Mills, MD 21117<br>(Baltimore County)<br><br>**Defendant.** | **CIVIL ACTION NO.**<br><br>**COMPLAINT<br>AND JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act ("the ADA") of 1990, as amended through the ADA Amendments Act of 2008, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices and to provide appropriate relief to Brittny Winter ("Winter"), who was adversely affected by such practices. As alleged with greater particularity below, the United States Equal Employment Opportunity Commission ("the EEOC" or the "Commission") alleges that Defendant Len Stoler, Inc. t/a Len Stoler Auto Group ("Defendant") unlawfully discriminated against Winter by demoting her on the basis of her disability, denying to her reasonable accommodation, and then discharging her based on her disability, traumatic brain injury.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland.

## PARTIES

3. Plaintiff, the United States Equal Employment Opportunity Commission, is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a corporation doing business and operating within the District of Maryland with at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g), (h).

6. At all relevant times, Defendant has been a covered entity within the meaning of Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

7.   Throughout calendar years 2018, 2019 and 2020, Defendant continuously employed more than 200 employees.

## ADMINISTRATIVE PROCEDURES

8.   More than thirty days prior to the institution of this lawsuit, Winter filed a charge with the Commission alleging violations of Title I of the ADA by Defendant.

9.   On or around May 2, 2023, the Commission issued to Defendant an administrative Determination finding reasonable cause to believe that Defendant violated the ADA and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10.   The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Determination.

11.   The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12.   On or around May 22, 2023, the Commission issued to Defendant a Notice of Failure of Conciliation.

13.   All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

14.   Defendant engaged in unlawful employment practices in violation of Sections 102(a) and 102(b)(5)(A) of Title I of the ADA, 42 U.S.C. §§12112(a), 12112(b)(1) and 12112(b)(5)(A) beginning around November 1, 2019 when it demoted Winter from her position of Service Advisor to Cashier, refused to reasonably accommodate her, and shortly thereafter terminated her, all based on her disability.

15. In July 2017, Defendant hired Winter as a Service Advisor. She had three years' experience with service and sales at automobile dealerships and also held a certificate in Autotech. Throughout almost the next two years, she demonstrated positive job performance, and she continued to excel in her position. In January 2019, Defendant transferred Winter to a more lucrative dealership to enable her to further enhance her compensation.

16. While still employed by Defendant, on June 1, 2019, Winter was involved in a motorcycle accident wherein the driver of the motorcycle was killed and she was critically injured.

17. As a result of the accident, Winter remained in a coma for several weeks, sustaining damage to her brain, respiratory, musculoskeletal, and neurological functions. When she emerged from the coma, she was unable to speak, walk, care for herself, and engage in any other activities without assistance.

18. Through intense physical therapy, occupational therapy, and speech therapy, Winter regained her ability to speak, walk, and care for herself, along with other activities, but she continued in her therapies after returning to work at Respondent in November 2019, and remains substantially impaired in performing these activities. As examples,

    a. Winter's speech is halting and slow, and noticeably different than before the accident;

    b. Because the left side of Winter's body is completely numb, her ability to walk, stand, climb steps, and engage in mobility is substantially impaired;

    c. Because Winter experienced a collapsed right lung, her ability to breathe is substantially impaired and she becomes short of breath after limited walking or even climbing one flight of stairs.

   d.  Without physical therapy, occupational therapy, and speech therapy to ameliorate the foregoing effects of her Traumatic Brain Injury, Winter would have been significantly limited in her speech and ability to ambulate.

19. At all relevant times, including since at least June 2019, Winter was an individual with a disability as defined by the ADA under Sections 3(1)(A), 3(1)(B), and 3(1)(C) of the ADA, 42 U.S.C. § 12102(1)(A), (B) & (C).

20. At all relevant times, including since at least June 2019, Ms. Winter has had physical impairments resulting from Traumatic Brain Injury that substantially limit the major bodily functions of her brain, neurological, respiratory, and musculoskeletal systems, Ms. Winter has had a record of such impairments, and Defendant regarded Ms. Winter as having a disability by demoting her, denying her reasonable accommodation, and discharging her on the basis of her non-transitory and non-minor physical impairments.

21. Defendant was fully aware of Winter's accident and remained aware of her progress throughout her recovery.

22. Throughout her employment with Defendant, Winter performed her job successfully, and was qualified to perform the essential functions of the Service Advisor and Cashier positions for Defendant as defined by the ADA.

*Count I: Demotion on the Basis of Disability*

23. The Commission incorporates by reference the factual allegations set forth in Paragraphs 14 through 22, above.

24. Upon learning that Winter had emerged from her coma, Defendant immediately cleared out her workspace, believing that she no longer would be able to perform this job because

of her impairments. Neither Winter nor anyone on her behalf requested or approved of this arrangement.

25. As Winter was ready to return to Defendant, Defendant made clear to her that it would only allow her to work as a Cashier, a position which paid less than half her salary as a Service Advisor, citing its concerns about her speech and energy.

26. Though Winter assured Defendant that she could continue in her position of Service Advisor, Defendant engaged in no discussions with her about whether she could perform her job with or without reasonable accommodation, nor did it permit a trial period to demonstrate her ability to do so.

27. On November 1, 2019, when Winter resumed work, Defendant had transferred her to a less busy dealership as a Cashier.

28. The effect of the practices complained of above in Paragraphs 14 through 27, above, has been to deprive Winter, who was at all times a qualified individual with a disability, of equal employment opportunities and otherwise adversely affect her rights under the ADA resulting in expenses incurred due to lost wages and benefits, emotional pain, suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and loss of enjoyment of life.

29. The unlawful employment practices complained of in Paragraphs 14 through 27, above, were intentional.

30. The unlawful employment practices complained of in Paragraphs 14 through 27, above, were done with malice or with reckless indifference to the federally protected rights of Winter.

### *Count II: Failure to Make Reasonable Accommodation for Disability*

31. The Commission incorporates by reference the factual allegations set forth in Paragraphs 14 through 30, above.

32. Because walking and balance still presented difficulty for Winter, around the time of her return to work, she requested a parking spot at Defendant's facility, where Defendant had two disabled spots and parking for its managers with demo cars.

33. Defendant refused Winter's request and required her to park remotely and take the shuttle with other workers.

34. Winter was unable to use the shuttle with her coworkers because of her breathing limitations and was unable to otherwise walk to the job site from the employee parking lot due to balance and walking limitations because of her disability.

35. The effect of the practices complained of above in Paragraphs 31 through 34, above, has been to deprive Winter, who was at all times a qualified individual with a disability, of equal employment opportunities and otherwise adversely affect her rights under the ADA resulting in expenses incurred due to emotional pain, suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and loss of enjoyment of life.

36. The unlawful employment practices complained of in Paragraphs 31 through 34, above, were intentional.

37. The unlawful employment practices complained of in Paragraphs 31 through 34, above, were done with malice or with reckless indifference to the federally protected rights of Winter.

*Count III: Unlawful Discharge on the Basis of Disability*

38. The Commission incorporates by reference the factual allegations set forth in Paragraphs 14 through 37, above.

39. In late November 2019, one of Winter's coworkers was mocking her voice, questioning her intelligence, and threatened physical violence against her. Winter complained to Defendant of this treatment. Defendant conducted an investigation, interviewed Winter and others, and discharged the coworker, noting workplace violations and problematic relations with others.

40. In January 2020, Defendant discharged Winter on the basis of her disability. Defendant relied on the November 2019 incident with the coworker who it found had engaged in problematic behavior and workplace violations, including toward Winter, and who it had already discharged.

41. At the time of her removal from the workplace, Winter was successfully performing the duties of Cashier.

42. The effect of the practices complained of above in Paragraphs 38 through 41, above, has been to deprive Winter, who was at all times a qualified individual with a disability, of equal employment opportunities and otherwise adversely affect her rights under the ADA resulting in expenses incurred due to lost wages and benefits, emotional pain, suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and loss of enjoyment of life.

43. The unlawful employment practices complained of in Paragraphs 38 through 41, above, were intentional.

44. The unlawful employment practices complained of in Paragraphs 38 through 41, above, were done with malice or with reckless indifference to the federally protected rights of Winter.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with them, from engaging in any employment practice that discriminates on the basis of disability;

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities and eradicate the effects of its past and present unlawful employment practices, and prevent disability discrimination from occurring in the future;

C. Order Defendant to make whole Winter by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay in lieu of reinstatement;

D. Order Defendant to make Winter whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 14 through 44, above;

E. Order Defendant to make Winter whole by providing compensation for past and future non-pecuniary losses including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, frustration, and humiliation, in an amount to be proven at trial;

F. Order Defendant to pay Winter punitive damages for its reckless indifference to her federally protected right to be free from discrimination based on disability;

G.   Order Defendant to sign and conspicuously post, for a designated period of time, a notice to all employees that sets forth the remedial action required by the Court and inform all employees that it will not discriminate against any employee because of a disability, including that it will comply with all aspects of the ADA;

H.   Grant such further relief as the Court deems necessary and proper in the public interest; and

I.   Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

GWENDOLYN YOUNG REAMS
ACTING GENERAL COUNSEL

CHRISTOPHER LAGE
DEPUTY GENERAL COUNSEL

LISA MORELLI
ACTING ASSOCIATE GENERAL COUNSEL
WASHINGTON, D.C.

*Debra Lawrence* by CS per authorization
DEBRA M. LAWRENCE
REGIONAL ATTORNEY
D. Md. Bar No. 04312
EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
(410) 801-6691
(410) 962-4270 (facsimile)

*/s/ Ronald L. Phillips*
RONALD L. PHILLIPS
ASSISTANT REGIONAL ATTORNEY
Ohio Bar No. 0070263
EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
(410) 801-6714
(410) 992-7880 (facsimile)
ronald.phillips@eeoc.gov

*/s/ Casey M. Shea*
CASEY M. SHEA
SENIOR TRIAL ATTORNEY
D. Md. Bar No. 21226
EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
(410) 801-6728
(410) 992-7880 (facsimile)
casey.shea@eeoc.gov